Signed: December 13, 2011

_____
EDWARD D. JELLEN
U.S. Bankruptcy Judge



UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | No. 10-70394<br>Adv. No. 10-04393 |
| JOSHUA P. PAGNINI aka JOSH PAGNINI and TENIEL A. PAGNINI, | Trial |
| Debtors. / | Date: 11/30/11 |
| ANTIOCH COMMUNITY FEDERAL CREDIT UNION, | Time: 10:00 a.m.<br>Ctrm: 215 |
| Plaintiff, | |
| vs. | |
| JOSHUA P. PAGNINI aka JOSH PAGNINI and TENIEL A. PAGNINI, | |
| Defendants. / | |

## DECISION

This is an adversary proceeding by which plaintiff Antioch Community Federal Credit Union ("Antioch") seeks to render a certain indebtedness of Joshua P. Pagnini, the above debtor ("Pagnini"), nondischargeable pursuant to Bankruptcy Code § 523(a)(2)(A) and (B)

Decision

(fraud; false financial statement).[1]  The court will issue its judgment in favor of Pagnini.

A. Background

   Prior to the filing of his voluntary chapter 7 petition herein, Pagnini bought and sold vintage vehicles.  Antioch financed many of Pagnini's purchases:

   1.  Pagnini borrowed funds (amount not in evidence) from Antioch to acquire a 1940 Cadillac La Salle (date of loan not in evidence).  This loan was secured by the La Salle, and is hereafter referred to as "Loan #13."

   2.  In August 2004, Pagnini borrowed $27,000 from Antioch to acquire a 1950 Ford.  This loan was secured by the Ford, and is hereafter referred to as "Loan #14."

   3.  In March 2006, Pagnini borrowed $178,990 from Antioch to acquire a 2006 Bentley.  This loan was secured by the Bentley, and is hereafter referred to as "Loan #21."

   4.  In February 2008, Pagnini refinanced the then outstanding balances of Loans nos. 13 and 14 by a loan in the sum of $35,154.  This refinance loan was secured by the Ford and the La Salle, and is hereafter referred to as "Loan #15."  Antioch did not advance any new funds to Pagnini in connection with Loan #15.

   5.  On or about February 9, 2009, Pagnini sold the Bentley for $75,000 with the permission of Antioch.  The buyer paid the sales

---

[1] By stipulation of the parties, Antioch dismissed defendant Teniel Pagnini as a party.

Decision                              2

proceeds directly to Antioch for application to Loan #21. Pagnini refinanced the remaining balance of Loan #21 with a loan in the sum of $67,732. This loan, which is the subject of this adversary proceeding, is hereafter referred to as "Loan #43." Loan #43 was secured by the Ford, which Antioch released as collateral for Loan #15. Antioch did not advance any new funds to Pagnini in connection with Loan #43.

The gravamen of Antioch's nondischargeability claim against Pagnini is based on an alleged misrepresentation by Pagnini as to the value of the Ford in connection with Loan #43. Specifically, back in 2004, Antioch had commissioned a vehicle appraiser, Ed Archer ("Archer"), to appraise the Ford in connection with Loan #14. Archer concluded that the Ford had a fair market value of $33,750.

Sometime after Antioch made Loan #14, Pagnini decided to restore the Ford. He therefore dismantled it, and sold the engine, transmission, and radiator. Pagnini testified that he received approximately $1,500 in sales proceeds for these parts. Pagnini further testified that he used the sales proceeds to purchase an engine that he sent to a mechanic in Los Angeles to refurbish for the Ford, and to pay the mechanic in Antioch that disassembled the Ford.

Pagnini also testified that he had intended to acquire parts to replace the parts he had sold, and to re-assemble the Ford. Due to setbacks in his economic position, testified Pagnini, he was not able to afford the replacement parts, and the Ford therefore

Decision 3

remained disassembled with vital parts missing.

At some point prior to its decision to make Loan #48, Antioch decided it needed an updated appraisal of the Ford, and commissioned Archer to provide the update. Archer contacted and spoke with Pagnini about the Ford, but did not perform a physical inspection. Pagnini did not tell Archer that the Ford was disassembled, and was missing an engine, transmission, and radiator. Not knowing the actual state of the Ford, Archer concluded, and reported to Antioch, that the Ford had a value of $38,200.

Thereafter, Antioch agreed to refinance loan #21 (the Bentley) on conditions that: (a) Pagnini sell the Bentley for an amount acceptable to Antioch and apply the sales proceeds to Loan #21, (b) the Ford secure the new refinance loan (Loan #48) rather than Loan #15, and (c) Pagnini obtain a co-signer for Loan #48. The conditions were met, and Antioch refinanced Loan #21.

Thereafter, Antioch discovered the actual condition of the Ford. On September 10, 2010, Pagnini filed his voluntary chapter 7 petition herein. The present adversary proceeding followed.

B. Discussion - Bankruptcy Code § 523(a)(2)(A)

Bankruptcy Code § 523(a)(2)(A) provides, in relevant part:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt--
> . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

Decision 4

To prevail under § 523(a)(2)(A), a creditor must establish that: (1) the debtor made a representation, (2) with knowledge of its falsity, (3) with the intention and purpose of deceiving the creditor, (4) that the creditor relied on the representation, and (5) that the creditor sustained damage as the proximate result thereof. In re Britton, 950 F.2d 602, 604 (9th Cir. 1991). The creditor must establish each of these elements by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279 (1991).

As to the first four requirements, Antioch contends that Pagnini had a duty to tell its representative, Archer, that the Ford was disassembled, and failed to do so with the intent to deceive Antioch into refinancing Loan #21 (the Bentley). Anna Tellez, Antioch's Chief Executive Officer, testified that, had Antioch known the true condition of the Ford, it would not have refinanced Loan #21, and would not have permitted Pagnini to sell the Bentley for $75,000. Rather, testified Tellez, Antioch would have repossessed and sold the Bentley.

Pagnini disputes the foregoing, and contends that Antioch lead him to believe that it needed an updated appraisal of the Ford for its file, but not for purposes of any particular extension of credit. He therefore disclaims any intent to deceive, and further argues that at the time Antioch requested the updated appraisal, it had not yet decided whether then proposed Loan #48 was to be secured by the Ford or the La Salle.

The court agrees with Antioch that in some situations, silence can qualify as a misrepresentation for purposes of Bankruptcy Code

Decision 5

§ 523(a)(2)(A). As the court stated in In re Duncan, 2011 WL 3300162 (9th Cir. BAP 2011), "a party to a business transaction is under a duty to disclose to the other party facts basic to the transaction before the transaction is consummated, if he or she knows that the other is about to enter into the transaction under a mistake as to them and that the other party, because of the relationship between them, would reasonably expect disclosure of such facts." Id. at 6. See also In re Apte, 96 F.3d 1319, 1324 (9th Cir. 1996). Moreover, a debtor's failure to disclose a material fact can establish the requisite reliance by the creditor. Id.

Here, Pagnini was in discussions with Antioch regarding a refinance of Loan #21 in December 2008, after he had disassembled the Ford and before Antioch had committed to extend Loan #48 to Pagnini. Indeed, on December 18, 2008, Pagnini sent the updated Ford appraisal to Antioch showing a valuation of $38,200 in support of his request for a refinance of Loan #21 (the Bentley), knowing that the appraisal was completely inaccurate.

This is demonstrated by Exhibit 23, a letter from Pagnini to Antioch regarding the proposed refinance of Loan #21. In that letter, Pagnini stated "We are enclosing two copies of an updated appraisal which will help give support to the negative equity." Although Pagnini does not so admit, the weight of the evidence showed that the subject updated appraisal was Archer's updated appraisal of the Ford: no evidence of the existence of any other updated appraisal was presented at trial.

Decision 6

It is true that, at that time, Antioch may have not decided whether the proposed loan was to be secured by the La Salle or the Ford. It is equally true, however, that Pagnini knew that Antioch had a security interest in the Ford, and thus, in monitoring its value. Pagnini also knew that a disassembled Ford that was missing key parts was worth nowhere close to the value that Antioch believed it to be worth. Yet he made no disclosure of this fact to Archer or Antioch.

Thus, Antioch established the first four elements mentioned in Britton of its § 523(a)(2)(A) claim. Apte, 96 F.3d 1319.

Unfortunately for Antioch, however, the weight of the evidence did not show that Antioch suffered any damage as a proximate result of Pagnini's concealment of the condition of the Ford. The fifth element of § 523(a)(2)(A) is therefore not satisfied.

In order to show damages proximately caused by Pagnini's fraud, Antioch must demonstrate that it had valuable collection remedies at the time of renewal, and that such remedies lost value during the renewal period. See In re Siriani, 967 F.2d 302, 306 (9th Cir. 1992); In re Kim, 163 B.R. 157, 161 (9th Cir BAP 1994).

When asked about the harm, if any, that Antioch suffered by refinancing Loan #21 via Loan #43, Anna Tellez testified as to only one item of alleged harm. Specifically, she testified that, had Antioch known the actual condition of the Ford, it would not have refinanced Loan #21, and would not have allowed Pagnini to sell the Bentley for $75,000. She further testified that Antioch would have repossessed and sold the Bentley, and that upon such sale, could

Decision 7

have received more than $75,000.

But Antioch did not submit any evidence whatsoever to show that it could have realized more than $75,000 on repossession and sale of the Bentley. Moreover, Antioch advanced no new cash, and presented no evidence of any other valuable collection remedies it gave up in connection with its refinance of Loan #21 via Loan #43.

The court therefore holds that Antioch has failed to carry its burden of establishing that it suffered any damage as the proximate result of Pagnini's failure to disclose the true condition of the Ford. It follows that Pagnini must prevail as to Antioch's claim under Bankruptcy Code § 523(a)(2)(A).

C. <u>Discussion - Bankruptcy Code § 523(a)(2)(B)</u>.

Bankruptcy Code § 523(a)(2)(B) provides:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt-
> 2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
> . . .
>     (B) use of a statement in writing -
>     (i) that is materially false;
>     (ii) respecting the debtor's or an insider's financial condition;
>     (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>     (iv) that the debtor caused to be made or published with intent to deceive . . .

Here, Antioch argues that Pagnini's misrepresentation regarding the value of the Ford is a "statement in writing . . . respecting the debtor's financial condition."

This claim fails. First, as previously discussed, Antioch failed to show that it suffered any loss as the proximate result of

Decision 8

any misrepresentation by Pagnini.

Moreover, a statement as to the value of one asset, without more, does not qualify as a "statement in writing . . . respecting the debtor's financial condition" within the meaning of Bankruptcy Code § 523(a)(2)(B). <u>In re Belice</u>, \_\_\_\_\_ B.R. \_\_\_\_\_, No. SC-10-1423-MkHKi, slip op. at 22-24 (9th Cir. BAP 2011), following <u>In re Joelson</u>, 427 F.3d 700, 714 (10th Cir. 2005); <u>see also</u> <u>In re Kirsh</u>, 973 F.2d 1454, 1457 (9th Cir. 1992) (§ 523(a)(2)(B) only applies where the document sets forth the debtor's net worth or overall financial condition); <u>Obrist v. Christensen</u>, 337 F.2d 220, 220 (9th Cir. 1964) (the statement in question must conform to the "popular concept of what a financial statement is").

For the foregoing reasons, the court holds that Pagnini is entitled to prevail as to Antioch's claim under Bankruptcy Code § 523(a)(2)(B).

D. <u>Discussion - Bankruptcy Code § 523(a)(6)</u>.

Antioch did not plead any claim under Bankruptcy Code § 523(a)(6).[2] Under some circumstances, the willful and malicious conversion or destruction of a secured party's collateral may be considered a willful and malicious injury under Bankruptcy Code § 523(a)(6). <u>See</u>, <u>e.g.</u>, <u>In re Mickens</u>, 312 B.R. 666 (Bankr. N.D.

---

[2]Bankruptcy Code § 523(a)(6) provides: "A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt – . . . for willful and malicious injury by the debtor to another entity or to the property of another entity."

Decision 9

Cal. 2004). Accordingly, in the interest of a complete record, the court will address this matter.[3]

To prevail under Bankruptcy Code § 523(a)(6), the plaintiff must establish either that the defendant committed a wrongful act with the intention of causing plaintiff injury, or believed that injury was substantially certain to occur as a result of his conduct. In re Jercich, 238 F.3d 1202, 1208-09 (9th Cir. 2001). A subjective standard applies under which the creditor must prove the debtor's "actual knowledge that harm to the creditor was substantially certain." In re Su, 290 F.3d 1140, 1146 (9th Cir. 2002).

Here, Antioch did not establish that Pagnini intended to harm it, or that he was substantially certain Antioch would be harmed by his disassembly of the Ford. Rather, the weight of the evidence supports Pagnini's contention that he disassembled the Ford to conduct a restoration, not to harm Antioch, and that he was unable to complete the restoration due to an unanticipated lack of funds. Under these circumstances, his conduct is not actionable under Bankruptcy Code § 523(a)(6).

///
///

---

[3] Federal Rule of Civil Procedure 15, applicable herein via Federal Rule of Bankruptcy Procedure 7015, provides that, "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. Fed. R. Civ. Pro. 15(b).

Decision                            10

D.  Conclusion

The court will issue its judgment in favor of Pagnini.

**END OF ORDER**

COURT SERVICE LIST

Amanda Ferns
Ferns, Adams and Associates
2815 Mitchell Drive #210
Walnut Creek, CA 94598

Ronald B. Bass
Law Offices
560 Lennon Lane, Suite 100
Walnut Creek, CA 94598

Decision                                    12